354 So.2d 1200 (1977)
Gerald F. RICHMAN, Appellant,
v.
Robert L. SHEVIN, etc., et al., Appellees.
No. 51765.
Supreme Court of Florida.
December 22, 1977.
Rehearing Denied February 28, 1978.
*1201 Talbot D'Alemberte of Steel, Hector & Davis, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Richard A. Hixson, Asst. Atty. Gen., and Stephen Marc Slepin of Slepin & Schwartz, Tallahassee, for appellees.
KARL, Justice.
This cause is before us on direct appeal to review the final judgment of the Circuit Court in and for Leon County upholding the constitutionality of certain portions of the election law, Sections 106.011(2) and 106.08(1), Florida Statutes (1975), as they apply to the Dade County Judicial Trust Fund, thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution. Snedeker v. Vernmar, Ltd., 151 So.2d 439 (Fla. 1963).
The primary question presented for review in this cause is whether the Dade County Judicial Trust Fund is a "political committee" within the definition of Section 106.011(2), Florida Statutes (1975), and as utilized in Section 106.08, Florida Statutes (1975), and if so, whether Section 106.011(2) is unconstitutionally overbroad.
Because of the relationship of lawyer and judge and the peculiar problems wrought by a judicial candidate seeking campaign financing, the Dade County Bar Association devised the Dade County Judicial Trust Fund in 1972, the declared purpose of which is to receive and distribute voluntary contributions from members of The Florida Bar who pledge not to make any other monetary contribution, either directly or indirectly to any incumbent judge or candidate for judicial office other than the contribution to the fund. These funds are to be distributed to "Fund Qualified" judicial candidates[1] in accordance with the formula *1202 set out in the trust agreement. Pursuant to the terms of the trust agreement, the trust is administered by five trustees who act as escrow agents. The method of distribution of funds to candidates is based upon the poll conducted by the Dade County Bar Association. Each contributor to the fund signs a pledge, and to be eligible for contributions through the trust fund, each candidate must sign a pledge that he will not directly or indirectly solicit or accept contributions from members of The Florida Bar and that he will apply all monies received from the fund only toward campaign expenses. The fund has filed campaign treasurer reports with the Secretary of State.
On September 8, 1972, the Attorney General wrote a letter to Judge Nathan, who had written to inquire whether the Bar Association could contribute $1,400 to each candidate, and opined that the maximum allowable contribution by the trust fund to each judicial candidate would be $1,000.
In October, 1974, in response to his inquiry, the Secretary of State wrote Judge Sepe advising him that the Dade County Bar Association could not lawfully make a contribution of $1,800 to him as a candidate for circuit judge since the maximum contribution allowed by Section 106.08(1)(a) or (b), Florida Statutes (1975), is $1,000.
On August 6, 1975, appellant, plaintiff below, President of the Dade County Bar Association and formerly co-chairman of the trust fund, wrote to the Department of State expressing doubts as to the forms to be filed with the Secretary of State since they did not appear appropriate for this type of organization.
Apparently, a complaint was made to the Florida Elections Commission relative to the Dade County Trust Fund. Appellant voluntarily appeared before the Commission to respond to questions and to produce all documents requested. At the conclusion of the proceedings, the Commission issued a notice of determination on February 14, 1977, finding that probable cause exists to believe that the Dade Judicial Trust Fund has violated Section 106.08, Florida Statutes (1975), by having contributed as a political committee to candidates in excess of the amounts prescribed by Section 106.08, Florida Statutes (1975), notwithstanding warning of the Attorney General.
Subsequently, appellant filed a complaint for declaratory judgment and injunctive relief against the Attorney General, the State Attorney of the Eleventh Judicial Circuit and the Florida Elections Commission. The complaint alleged that the judicial trust fund has a continuing operation essential to its purpose; that the Dade Bar Association has delayed fund raising in order to cooperate with state officials; that the Trust Fund has funds on hand which it is obligated to distribute; that the Dade County Bar Association has an obligation to indemnify the trustees for any reasonable legal expenses incurred in performance of their duties and is thereby exposed to potential liability in excess of current resources; that because of the investigation by the Florida Elections Commission and Notice of Determination, the appellant, plaintiff, is in doubt as to the appropriate action to be taken by the Judicial Trust Fund in relation to contributions to the Fund; that the continuing operation of the Trust Fund placed appellant under continuing threat of investigation and legal action with consequent loss of his rights of free speech.
*1203 The trial judge entered an order May 3, 1977, determining that the essential issues posed are whether the trust fund is comprehended within the definition of "political committee" as delineated by Section 106.011, Florida Statutes (1975), and, if so, whether said section is unconstitutionally overbroad. As to the question of legitimacy of the state's Election Commission, the court declined to answer it on the basis that this issue was moot. The trial court concluded that the Dade County Trust Fund is a political committee defined by Section 106.011, Florida Statutes (1975), and is subject to the limitations on campaign contributions imposed by Section 106.08, Florida Statutes (1975). The trial court reasoned:
"While it is obviously true that lawyers occupy an unusual position with respect to judges, this Court is of the opinion that this relationship cannot thereby be classified as unique or singular.
"The Legislature has the undoubted authority to regulate within reasonable bounds the conduct of state elections, including the regulation of campaign contributions. Buckley (Buckley v. Valeo, 424 U.S. 1 [96 S.Ct. 612,] 46 L.Ed.2d 659) essentially articulated two reasons for the propriety in limiting the amount of financial contributions by individuals to potential officeholders: 1. The tendency or possibility to create a quid pro quo relationship and, 2. The creation of an appearance of influence of corruption. It is thus obvious that the question of contributions and the amount thereof is a legitimate concern of the Legislature. The means employed by the Legislature to accomplish the public good in an area of vital concern to the Legislature should be left to that body and Courts should not intrude unless it can be clearly established that the means employed to accomplish that good violate fundamental rights. From a full review and analysis of the question presented, we are unable to discern that the means employed or the limitations imposed in the statutes under consideration are overly broad. It is the opinion of this Court that the Dade County Judicial Trust Fund clearly falls within the definition of political committee as defined by the statute and that such inclusion does not result in over-broadness in the application of the statute.
"It certainly appears to this Court that the plan devised by the Dade County Bar accomplishes the purpose for which it was designed and may, in fact, offer a more complete solution to a complex problem than the solution adopted by the Legislature. However, as alluded to previously herein, it is not for this Court to determine what is best for the people of the State of Florida but only to determine whether the Legislature, in enacting the laws under consideration, did so within the confines of legitimate authority. When considered in the light of all of the factors involved, it is our opinion that the Legislature addressed itself to a question of public interest and did so in a proper and lawful manner."
Final judgment was entered May 12, 1977, incorporating by reference the May 3, 1977, order and ordering that "the plaintiff's challenge to the constitutionality of the election laws as the Election Commission would apply them to the Dade County Judicial Trust Fund is not well taken and the Court finds that the challenged statutes are constitutional as applied to the Judicial Trust Fund... ."
We agree entirely with the holding and rationale of the final judgment of the trial court in this matter.
Section 106.011(2), Florida Statutes (1975), provides in pertinent part:
"`Political committee' means a combination of two or more individuals, or a person other than an individual, the primary or incidental purpose of which is to support or oppose any candidate, issue, or political party and which accepts contributions or makes expenditures during a calendar year in an aggregate amount in excess of five hundred dollars. Organizations which are determined by the Department of State to be committees of continuous existence pursuant to s. 106.04 *1204 and political parties regulated by chapter 103 shall not be considered political committees for the purposes of this chapter... ."
Section 106.08(1)(a) provides:
"(1) No person or political committee shall make contributions to any candidate or political committee in this state, in moneys, material, or supplies or by way of loan, in excess of the following amounts:
"(a) To a candidate for countywide office or to a candidate in any election conducted on less than a countywide basis, one thousand dollars."
Appellant argues that the trial court erroneously determined that the Judicial Trust Fund is a political committee since, contends appellant, the purpose of the fund is not to support or oppose candidates but is to establish a method for contributions which will screen out potential abuse and to insulate lawyers, judges and judicial candidates from problems associated with direct campaign contribution and, since there is no discretion in the committee arrangement, to direct contributions to certain candidates. The laudable purpose of this trust fund does not alone justify exemption from the statutory definition of "political committee." On the contrary, the Dade County Trust Fund possesses all of the statutorily delineated elements of a "political committee." The trust fund functions as a combination of two or more persons, is an "other combination of individuals having collective capacity,"[2] accepts contributions or makes expenditures during a calendar year in an aggregate amount in excess of $500 and has as its primary or incidental purpose to support candidates. Emphasizing the use of the term "incidental purpose" in Section 106.011(2), Florida Statutes (1975), appellee submits, and we agree, that by making distribution to candidates, i.e., contributions, pursuant to the terms of the trust agreement, the trust fund effectually supports candidates for judicial office, and it is immaterial for the purpose of definition of political committee whether the candidates supported have been voted well-qualified or not. Monies paid to candidates from the fund are treated as campaign contributions and are reported accordingly.
The trial court correctly determined that the inclusion of the Dade County Trust Fund within the definition of "political committee" did not render Section 106.011(2), Florida Statutes (1975), unconstitutionally overbroad. Appellant expressly declares that he does not challenge the constitutionality of the contribution limitation but, rather, only questions the imposition of such limitation on the Judicial Trust Fund.
The Legislature is charged with the responsibility and authority of regulating the election process so as to protect the integrity of the political process. These regulations should be reasonable and necessary and not inconsistent with the constitution of this state. Treiman v. Malmquist, 342 So.2d 972 (Fla. 1977). This Court, in Bodner v. Gray, 129 So.2d 419, 421 (Fla. 1961), opined:
"The law places restraints upon all of its citizens in the exercise of their rights and liberties under a republican form of government. Such restraints have been found to be necessary in the development of our democratic processes to preserve the very liberties which we exercise. Similar restraints may lawfully be imposed upon individual candidates for public office."
Upholding the contribution limitation in the Federal Election Campaign Act, the Supreme Court of the United States, in Buckley v. Valeo, supra, reasoned:
"In view of the fundamental nature of the right to associate, governmental `action which may have the effect of curtailing the freedom to associate is subject to *1205 the closest scrutiny.' NAACP v. Alabama, supra, 357 U.S. 449, at 460-461, 78 S.Ct. 1163, 2 L.Ed.2d 1488. Yet, it is clear that `neither the right to associate nor the right to participate in political activities is absolute.' [Cases cited.] Even a `"significant interference" with protected rights of political association' may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms. [Cases cited.]
"Appellees argue that the Act's restrictions on large campaign contributions are justified by three governmental interests. According to the parties and amici, the primary interest served by the limitations and, indeed, by the Act as a whole, is the prevention of corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office. Two `ancillary' interests underlying the Act are also allegedly furthered by the $1,000 limits on contributions. First, the limits serve to mute the voices of affluent persons and groups in the election process and thereby to equalize the relative ability of all citizens to affect the outcome of elections. Second, it is argued, the ceilings may to some extent act as a brake on the skyrocketing cost of political campaigns and thereby serve to open the political system more widely to candidates without access to sources of large amounts of money.
"It is unnecessary to look beyond the Act's primary purpose  to limit the actuality and appearance of corruption resulting from large individual financial contributions  in order to find a constitutionally sufficient justification for the $1,000 contribution limitation.
.....
"We find that, under the rigorous standard of review established by our prior decisions, the weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms caused by the $1,000 contribution ceiling."
Appellant argues that the fund was organized to eliminate the evil and corruption contemplated by the Legislature and, therefore, since the fund serves the same purpose as the statute, the Legislature cannot regulate in that area. In effect, this argument contends for a usurpation of the legislative function by private individuals who determine in their own judgment how best to regulate matters of public concern. The Legislature, not private individuals, determines what reasonable regulations should be enacted to avoid evil and corruption in the election process. This Court likewise does not legislate by determining the wisdom of legislative policy but, rather, decides whether the legislative regulation comports with the Constitution.
In Holley v. Adams, 238 So.2d 401 (Fla. 1970), this Court said:
"The judiciary will not nullify legislative acts merely on grounds of the policy and wisdom of such act, no matter how unwise or unpolitic they might be, so long as there is no plain violation of the Constitution. [Cases cited.]"
See also In re Apportionment Law, SJR 1305, 263 So.2d 797 (Fla. 1972).
We find that Section 106.011(2), Florida Statutes (1975), and Section 106.08, Florida Statutes (1975), are not unconstitutionally overbroad as applied to the Dade County Trust Fund because the Legislature did not exempt organizations who set up their own procedures for policing themselves. The Legislature, in promulgating Section 106.011(2) and Section 106.08, regulating campaign contributions, determined that individuals in a collective capacity should only be permitted to have a limited amount of political clout. Cf. Buckley v. Valeo, supra.
Since we conclude that the Dade County Trust Fund is a political committee within the statutory definition, appellant's argument that the trust fund does not violate the statutory proscription against contributions in excess of $1,000 when it exceeds the $1,000 limit because, inter alia, *1206 the pro rata contribution to any lawyer has never exceeded $70 is without merit. Appellant's contention is that this arrangement is the same as if an individual gathered contributions from other individuals and delivered them in the same form to a candidate. This is not the case, however, since the contributions from the individuals are commingled by the trustee and since the terms and conditions of the trust agreement as to authorization for contributions to "Fund Qualified" judicial candidates transpose the Dade County Trust Fund from the permissible character of one serving as a conduit for contributions to candidates to a "political committee" which may not contribute in excess of $1,000.
Finally, appellant urges that the method of appointment of the Elections Commission as set forth in Section 106.24(2), Florida Statutes (1975), unconstitutionally infringes on the doctrine of separation of powers in Article II, Section 3, Florida Constitution (1968), and the executive power of appointment in Article IV, Sections 1 and 6, Florida Constitution (1968). Relative to this point, the trial judge ruled that under the particular circumstances of this case, the question was moot. As appears from the record at the time of the declaratory judgment action, there was no justiciable controversy between appellant and the Florida Elections Commission. The action of the Elections Commission had been concluded, and Notice of Determination had been filed by the Commission with the Department of Legal Affairs pursuant to the dictates of Section 106.27, Florida Statutes (1975). Appellee, Elections Commission of the State of Florida, posits that not only is the question moot because the legal capacity of the Commission has already been passed and exhausted since the matter was no longer within its jurisdiction but also because this issue is extraneous to the resolution of any of the issues outstanding in the cause. We hold that the trial court properly determined that the question as to the constitutionality vel non of the Elections Commission's composition was moot, the issue not being justiciable under the facts of this cause. We, therefore, cannot resolve the question of the constitutionality of the composition of the Elections Commission in the present cause.
Accordingly, for the foregoing reasons, we find that Sections 106.011(2) and 106.08, Florida Statutes (1975), are not unconstitutional as applied to the Dade County Judicial Trust Fund and affirm the judgment of the trial court.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Section 10 of the trust agreement provides:

"10. All contributions to the fund, other than monies expended to publish biographical sketches as set forth in paragraph 15, shall be distributed by the Trustees of the fund in accordance with the following formula not later than seven days from the date of receipt and certification of the judicial poll propounded to all members of the Bar maintaining offices in Dade County, by the Dade County Bar Association;
"a. A `Fund Qualified' candidate is defined to be a candidate who meets the requirements set forth herein for receipt of monies from the Trust Fund.
"b. All unopposed candidates or unopposed incumbents who receive qualified votes totaling at least 60% of the total number of qualified and unqualified votes as to their candidacy and receive not more than 85% `don't know' votes of the total number of votes cast for their candidacy shall be entitled to share pro-rata in the distribution of funds along with all other Fund Qualified candidates up to the amount of their qualifying fees and shall apply funds thus received only to payment of the qualifying fee. Such unopposed candidates or incumbents shall specifically agree and pledge to return to any donor, whether or not such donor be a member of The Florida Bar, any funds that have been received by said unopposed candidates or incumbents to the extent that such funds exceed the amount of the qualifying fee less the amount of monies received from the Trust Fund.
"c. To be eligible for contributions from the Trust Fund a candidate for judicial office in a contested race (1) must receive at least 60% qualified votes of the total number of qualified and unqualified votes cast towards his candidacy; and (2) must receive not more than 85% `don't know' of the total number of votes cast toward his candidacy.
"d. The Trustees, based upon the above formula, shall then determine the total number of divisions in which there is at least one candidate, either opposed or unopposed, who is Fund Qualified to receive contributions from the Fund in the divisions of the Third District Court of Appeal of Florida, and the Circuit Court and the County Court of the Eleventh Judicial Circuit. The total funds of the Trust Fund received seven days from the date of the certification of the judicial poll shall then be prorated among such divisions provided, however, that 25% of the total funds received shall first be allocated to the County Court divisions and the remainder to all other eligible divisions. Should the funds received for each of those divisions exceed the qualifying fee for said divisions, the excess of funds over and above the total amount of the qualifying fees shall then be redistributed pro-rata to all divisions in which there are opposed Fund Qualified candidates.
"e. As to each such division in where there is only one Fund Qualified opposed candidate, said candidate shall received [sic.] the entire amount of funds allocated to his division. As to each division in which there is more than one Fund Qualified candidate, the funds for that division shall be distributed pro-rata to all such Fund Qualified candidates in that division."
[2] § 106.011(7), Fla. Stat. (1975), defines person as utilized in § 106.011(2), Fla. Stat. (1975), as follows:

"`Person' means an individual or a corporation, association, firm, partnership, joint stock company, club, organization, or other combination of individuals having collective capacity."