**LET'S HELP FLORIDA, a Political Committee and Paul M. Bruun, Plaintiffs,**

v.

**Bruce SMATHERS, as Secretary of State of the State of Florida, et al., Defendants.**

No. TCA 78–0750.

United States District Court,
N. D. Florida,
Tallahassee Division.

May 18, 1978.

Tobias Simon, Miami, Fla., for Let's Help Florida.

Robert Shevin, Atty. Gen., Douglas C. Kearney, Asst. Atty. Gen., and Stephen Marc Slepin, Tallahassee, Fla., for Florida Elections Commission.

David E. Cardwell, Tallahassee, Fla., for Florida Division of Elections.

Jack Shreve, Gen. Counsel, Florida Dept. of State, Tallahassee, Fla., for Bruce Smathers.

## MEMORANDUM OPINION

STAFFORD, District Judge.

On February 27, 1978, plaintiffs filed this action for declaratory and injunctive relief seeking to permanently enjoin enforcement of Fla.Stat. § 106.08(1)(d) (1977), which provides:

(1) No person or political committee shall make contributions to any candidate or political committee in this state, for any election, in excess of the following amounts:

\* \* \* \* \* \*

(d) To any political committee in support of, or in opposition to, an issue to be voted on in a statewide election, $3,000.

Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343(3).

On March 8 a hearing was held on plaintiffs' application for preliminary injunction and on March 29 an order was entered prohibiting defendants from enforcing section 106.08(1)(d), pendente lite. Because of the need for an expeditious resolution of the weighty constitutional issue presented, and with the consent of the parties, final hearing was held on April 21.

1. That section provides:
Initiative.—The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the secretary of state a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a

### The Parties

Plaintiff Let's Help Florida is a political committee organized and registered pursuant to Florida law for the express purpose of conducting "a public education campaign urging the passage of a constitutional amendment which will legalize casino gambling in Southern Florida . . . ." (Plaintiffs' ex. 1). The campaign entails securing amendment of Art. 10 § 7 of the Florida Constitution, which provides:

Lotteries—Lotteries, other than the types of pari-mutuel pools authorized by law as of the effective date of this constitution, are hereby prohibited in this state.

Let's Help Florida intends to utilize the initiative mechanism provided in Art. XI § 3 of the Florida Constitution[1] to place their proposal before the electorate in the November, 1978 election. The committee is currently engaged in the petition drive necessary to secure for their issue a position on the ballot. The estimated cost of the entire campaign is in excess of one million dollars. (Plaintiffs' ex. 3). Plaintiff Paul M. Bruun is an individual who, according to the allegations of the complaint, is desirous of contributing money to Let's Help Florida in an amount which exceeds the limitation of section 106.08(1)(d).

Defendants are the Secretary of State of Florida, the Director of the Division of Elections, the Attorney General, and the individual members of the Florida Elections Commission.[2] These officials are charged with the responsibility of enforcing the provisions of the act in issue here. See Fla. Stat. §§ 106.22–27.

### Standing

■ Initially, defendants challenge the standing of plaintiffs to bring this action.

whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

2. Throughout this litigation the defendants have been represented by different counsel. Recognizing that in the memoranda on file and at oral argument the defendants do not necessarily rely on the same arguments and authorities in support of section 106.08(1)(d), for ease of reference they will be treated collectively in this opinion.

As noted previously, the complaint indicates that Paul M. Bruun wishes to make a contribution in excess of the statutory limit. Ordinarily, this allegation would be sufficient to confer upon Mr. Bruun the requisite standing to sue. However, this case has now proceeded to final hearing and Mr. Bruun did not appear.[3] The record is therefore bereft of any support for those allegations by deposition, affidavit, or otherwise.[4] Accordingly, that portion of the complaint relating to Mr. Bruun must be taken as having not been established by competent evidence and the issue presented in this litigation must be determined in light of the rights of Let's Help Florida alone.

The question of standing to sue generally involves a two-pronged inquiry. As a constitutional matter, standing relates to whether the action presents a case or controversy within the meaning of Art. III. This requirement is satisfied where it is shown that the challenged activity has caused plaintiff "injury in fact" sufficient to demonstrate a personal stake in the outcome of the litigation "as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The second prong of the standing inquiry relates to whether plaintiff is the proper proponent of the rights which form the basis of the suit. *Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). This is a rule of self restraint imposed by the courts rather than the constitution. *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); See also *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

There can be little doubt that Let's Help Florida satisfies the first prong of the standing issue in this case. The contribution limitation involved herein directly affects the committee's ability to gather funds in support of its efforts. Samuel Vitali, Campaign Coordinator for Let's Help Florida, testified that the committee initially attempted to raise the required sums of money through contributions of $3,000 or less and was unsuccessful. In his opinion, if the ceiling is not lifted the campaign to amend the constitution could not proceed. This testimony is unrefuted. Thus, the injury to this plaintiff is patent and a personal stake in the outcome of this litigation has been demonstrated. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

The second prong of the standing issue presents a somewhat more difficult situation under the facts of this case. Because the allegations relating to Bruun have not been established, Let's Help Florida must either rely on the rights of its "members" or its own rights. While it has long been established that an organization may properly assert the rights of its membership, the courts have closely examined certain factual matters in applying this exception. First, the organization and its adherents should be closely identified with each other, with the organization comprising "the medium through which individual members seek to make more effective the expression of their own views." *NAACP v. Alabama,* 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). Second, it should be shown that the organization itself would be adversely affected by the action complained of. *Id.* at 459–60, 78 S.Ct. 1163. Finally, there must generally exist a genuine obstacle to the assertion by the members of their own rights. *Id.* at 459, 78 S.Ct. 1163.

Let's Help Florida does not have a formal membership. There is no mechanism through which an individual sharing its concerns may have a voice in its operation. However, one who makes a contribution may loosely be considered as a "member." (Testimony of Samuel Vitali). Because the

---

**3.** The failure of Mr. Bruun to appear was apparently due to illness. Counsel for plaintiffs did not request a continuance or an opportunity to·submit an affidavit or a deposition.

**4.** It should be noted that while the complaint is signed by Mr. Bruun it is not notarized or subscribed to pursuant to 28 U.S.C. Section 1746.

committee currently espouses only one view, it may properly be said that the committee and its "members" are for all practical purposes identical, thereby satisfying the first sub-part of the *NAACP v. Alabama, supra,* test. Likewise, there is no doubt that section 106.08(1)(d) directly impacts upon the committee in curtailing its ability to effectively campaign for its position.

Less clear is the impediment to the "members" asserting their own rights. Indeed, Bruun came forward as an adherent of the committee in this very suit. In those situations where third parties, including organizations, have been permitted to assert the rights of others the impediment to the persons on whose behalf the organization acts asserting their own rights has been closely scrutinized.[5] In this action Let's Help Florida has not addressed this question directly, choosing instead to rely on *Buckley v. Valeo, supra.* The court is not persuaded that *Buckley* represents a departure from the well settled principles of standing. In *Buckley* the plaintiffs challenging the federal election act included individuals and groups. Rather than delineate what rights were properly assertable by whom, the Court merely noted:

> In our view, the complaint in this case demonstrates that at least some of the appellants have a sufficient "personal stake" in a determination of the constitutional validity of each of the challenged provisions to present "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (footnote omitted).

*Buckley v. Valeo,* 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976), quoting *Aetna Life Ins. Co. v. Hayworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

This court is of the opinion that regardless of whether Let's Help Florida should be permitted to assert the rights of its "members", the merits of this controversy may be reached based upon the rights of the committee. The case undeniably involves First Amendment Freedoms, primarily those of political association. The Supreme Court has previously allowed a corporation to assert rights of association on its own behalf for the reason that "though a corporation, it is directly engaged in those activities, claimed to be constitutionally protected, which the statute would curtail." *NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). More recently, in *First National Bank of Boston v. Bellotti,* —— U.S. ——, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), the Supreme Court again dealt with the extension of First Amendment freedoms to artificial entities.

*Bellotti* involved a constitutional challenge to a Massachusetts law prohibiting certain corporations from expending money or making contributions for the purpose of influencing the vote on questions to be submitted to the voters. The Court did not take the opportunity to define the parameters of First Amendment protections afforded corporations, framing the question presented as:

> not whether corporations "have" First Amendment rights and, if so, whether they are coextensive with those of natural persons. Instead, the question must be whether § 8 abridges expression that the First Amendment was meant to protect.

*Id.* at ——, 98 S.Ct. at 1415. Finding that the statute did indeed infringe on expression the First Amendment was designed to protect, and noting the absence of a compelling state interest in the regulation, the statute was struck down by a divided court.

It must, of course, be recognized that the *Bellotti* decision is distinguishable from the case at bar. The Massachusetts law at issue in that case directly prohibited political

**5.** *See* for example *Singleton v. Wulff,* 428 U.S. 106, 117–18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1977); *Warth v. Seldin,* 422 U.S. 490, 510, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Eisenstadt v.*

*Baird,* 405 U.S. 438, 446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *NAACP v. Alabama,* 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

expression. This is clearly not the situation here, for section 106.08(1)(d) does not prohibit or limit the content of political speech and limits only indirectly the quantity of such speech. It should also be noted that appellants in *Bellotti* were corporations which were organized for purposes other than engaging in political campaigns. In this respect the forceful arguments of the dissenting opinion of Mr. Justice White have less application to Let's Help Florida. Unlike the corporations in *Bellotti*, plaintiff here is not a profit making organization and there are no shareholders in need of protection. Persons and entities contributing money to Let's Help Florida do so for the express purpose of advancing a political cause and the committee may therefore be viewed as "merely a means of achieving effective self-expression." *Bellotti, supra,* at 4382 (White, J. dissenting). Thus, under the reasoning of the majority in *Bellotti,* and based upon *NAACP v. Button,*[6] *supra,* Let's Help Florida is entitled to the protections afforded by the First Amendment and has the requisite standing to bring this action.

### The Campaign Finance Act

Before turning to the merits of plaintiff's claim, it is necessary to briefly examine Florida's campaign finance act, Fla.Stat. § 106 *et seq.,* as it applies to plaintiff. Under the act a "political committee" is defined as follows:

"Political committee" means a combination of two or more individuals, or a person other than an individual, the primary or incidental purpose of which is to support or oppose any candidate, issue, or political party and which accepts contributions or makes expenditures during a calendar year in an aggregate amount in excess of $100.

Fla.Stat. § 106.011(1). Each political committee is required to file a statement of organization which must include, *inter alia,* the following information:

(f) The name, address, office sought, and party affiliation of:

1. Each candidate whom the committee is supporting;

2. Any other individual, if any, whom the committee is supporting for nomination for election, or election, to any public office whatever;

(g) Any issue or issues such organization is supporting or opposing;

(h) If the committee is supporting the entire ticket of any party, a statement to that effect and the name of the party;

. . . . .

Fla.Stat. §§ 106.03(2)(f)(1), (2), (g), and (h). The activities of the committee are not limited by the statement of organization but any changes must be reported within 10 days of the change. Fla.Stat. § 106.03(3).

In addition to the above information, political committees are required to file periodic reports detailing the source and amount of contributions and expenditures made during the period. Fla.Stat. § 106.07. The reporting is required regardless of the *amount* of a contribution, except that when a contribution is less than $100.00 less information about the donor is required. Fla. Stat. § 106.07(4)(a). With the exception of the reporting requirements, the act imposes no limitations on independent expenditures, which are defined as:

an expenditure by a person for the purpose of advocating the election or defeat of a candidate or the approval or rejection of an issue, which expenditure is not controlled by, coordinated with, or made upon consultation with, any candidate,

---

**6.** In his dissenting opinion in *Bellotti, supra* at —— fn. 5, 98 S.Ct. 1407, Mr. Justice Rehnquist correctly points out that the rule established in *Button* was an alternative holding. This fact does not, however, impair the precedential value of the decision. As the Supreme Court long ago noted, "[i]t does not make a reason given for a conclusion in a case *obiter dictum,* be-

cause it is only one of two reasons for the same conclusion." *Richmond Co. v. United States,* 275 U.S. 331, 340, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928). See also *Massachusetts v. United States,* 333 U.S. 611, 623, 68 S.Ct. 747, 92 L.Ed. 968 (1948); *United States v. Title Ins. Co.,* 265 U.S. 472, 485, 44 S.Ct. 621, 68 L.Ed. 1110 (1924).

political committee, or agent of such candidate or committee.

Fla.Stat. § 106.011(5).

*Plaintiff's Claim and The Legal Standard*

Let's Help Florida contends that the $3,000 contribution limitation contained in section 106.08(1)(d), as it relates to a committee supporting an issue in a statewide election, violates the First and Fourteenth Amendments to the Constitution of the United States. More precisely, the rights involved in this case are freedom of association and, to a somewhat lesser degree, freedom of speech.

█ It is undeniable that First Amendment freedoms are fundamental to a free society and it is for this reason that the First Amendment occupies a preferred position among the guarantees of the Constitution. *See Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

█ The legal principles applicable to a case of this nature are particularly well settled. Thus, governmental activity having the effect of curtailing First Amendment freedoms is subject to strict judicial scrutiny. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Of course, these rights, and particularly that of association, are not absolute, but intrusions are permitted only when the state demonstrates a sufficiently compelling interest in regulation and the means employed to promote the interest are closely drawn to avoid unnecessary interference with protected freedoms, *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), because "First Amendment freedoms need breathing space to survive . . . ." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

The constitutional issue presented by plaintiff in this action is apparently one of first impression. The court has found no case directly dealing with this type claim and none have been cited by the parties. While the Supreme Court's decision in *Buckley v. Valeo, supra,* is instructive, the opinion does not squarely address the issue presented here. *Buckley* involved a constitutional challenge, primarily on First Amendment grounds, to various provisions of the Federal Election Campaign Act of 1971, as amended, 88 Stat. 1263. Of particular interest is the discussion as it relates to campaign contributions and expenditure limitations. The Federal Campaign Act sought to limit the amount a person or group could contribute to a candidate for elective office as well as placing ceilings on expenditures. The Supreme Court found that although the campaign contribution ceiling infringed on important associational rights, such a restriction was justified by the presence of a compelling governmental interest. Thus, the Court stated:

It is unnecessary to look beyond the Act's primary purpose—to limit the actuality and appearance of corruption resulting from large individual financial contributions—in order to find a constitutionally sufficient justification for the $1,000 contribution limitation. Under a system of private financing of elections, a candidate lacking immense personal or family wealth must depend on financial contributions from others to provide the resources necessary to conduct a successful campaign. The increasing importance of the communications media and sophisticated mass-mailing and polling operations to effective campaigning make the raising of large sums of money an ever more essential ingredient of an effective candidacy. To the extent that large contributions are given to secure political quid pro quo's from current and potential office holders, the integrity of our system of representative democracy is undermined.

*Buckley, supra,* 424 U.S. at 26–27, 96 S.Ct. at 638.

On the other hand, the Court found that the ceilings imposed on independent expenditures involved more of a direct restraint on the quantity of political speech and could not be justified by the interest served by the contribution limitations. After noting that the constitutionality of the expenditure limitations depended upon whether the interests "advanced in its sup-

port satisfy the exacting scrutiny applicable to limitations on core First Amendment rights," *Buckley, supra,* at 44–45, 96 S.Ct. at 647, the Court stated:

> We find that the governmental interest in preventing corruption and the appearance of corruption is inadequate to justify § 608(e)(1)'s ceiling on independent expenditures. [A]ssuming, arguendo, that large independent expenditures pose the same dangers of actual or apparent quid pro quo arrangements as do large contributions, § 608(e)(1) does not provide an answer that sufficiently relates to the elimination of those dangers.

*id.* at 45, 96 S.Ct. at 647. These principles must guide this court's decision.

### Preliminary Arguments

Before turning to a discussion of the statute involved herein and the interests it is claimed to support, several arguments advanced by defendants must be addressed. First, defendants continue to insist that limitations on "contributions" are *per se* constitutional. As stated in the memorandum in support of the petition for rehearing at page 7:

> This Honorable Court's Order of March 28, [sic] 1978 interprets *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) to stand for the proposition *not* that "contributions [to]" may be constitutionally limited and that "expenditures [by]" may not be, but rather that "contributions" may be limited only upon a showing of a regulable state interest of "sufficient magnitude."
>
> The Defendants do not so read *Buckley.* . . .

The court finds this argument to be totally without merit. The *Buckley* opinion states that the "weighty interests served by restricting the size of financial contributions to political candidates are sufficient to justify the limited effect upon First Amendment freedoms caused by the . . . contribution ceiling." *Buckley, supra* at 29, 96 S.Ct. at 640. Indeed, in a case decided subsequent to *Buckley,* the majority opinion states:

One of the principles underlying the Court's decision in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659, was that contributing to an organization for the purpose of spreading a political message is protected by the First Amendment. Because "[m]aking a contribution . . . enables like-minded persons to pool their resources in furtherance of common political goals," id., at 22, 96 S.Ct. [612] at 636, 46 L.Ed.2d 659, the Court reasoned that limitations upon the freedom to contribute "implicate fundamental First Amendment interests," id., at 23, 96 S.Ct. [612] at 636, 46 L.Ed.2d 659.

*Abood v. Detroit Board of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261, 283–4 (1977). Moreover, the dissenting opinion of Justice Powell in *Abood* contains the following passage:

> In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), we considered the constitutional validity of the Federal Election Campaign Act of 1971, as amended in 1974, which in one of its provisions limited the amounts that individuals could contribute to federal election campaigns. We held that these limitations on political contributions "impinge on protected associational freedoms":
>
> > "Making a contribution, like joining a political party, serves to affiliate a person with a candidate. In addition, it enables like-minded persons to pool their resources in furtherance of common political goals. The Act's contribution ceilings thus limit one important means of associating with a candidate or committee . . . ." Id., at 22, 96 S.Ct. 612, 46 L.Ed.2d 659.

*Id.* 431 U.S. at 255, 97 S.Ct. at 1810, 52 L.Ed.2d at 297–8. In light of this language, it cannot be gainsaid that the contribution limitations in section 106.08(1)(d) impinge on First Amendment freedoms. It is axiomatic that curtailment of First Amendment freedoms, including those of association, must be supported by a compelling state interest.

The next argument advanced by defendants is that the contribution limitations imposed by Florida law do not curtail the quantity of free speech. Closely related to this proposition is their argument that the act is constitutional because it does nothing to prohibit or diminish the "symbolic" act of associating with the candidate or organization of one's choice.

Dealing with the first of these assertions, the court has previously noted that the Supreme Court indicated contribution limitations did not appear to affect the quantity of speech to any significant degree. Thus, in the order granting preliminary injunction, this court stated:

> In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court noted that:
>
> [A] limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication.
>
> A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support. . .
>
> Given the important role of contributions in financing political campaigns, contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy. There is no indication, however, that the contribution limitations imposed by the Act would have any dramatic effect on the funding of campaigns and political associations. The overall effect of the Act's contribution ceilings is merely to require candidates and political committees to raise funds from a greater number of persons . . .

*Id.* at 20–22, [96 S.Ct. 612] (footnotes omitted). While it may be true that the quantity of communication would not increase with the size of a contribution to a political candidate in an election in which numerous issues are normally addressed, it is not altogether clear that the same result would follow in an election which involves only a single issue which is to be accepted or rejected by the voters.

*Let's Help Florida v. Smathers*, TCA 78–0750, p. 8, fn 2 (March 29, 1978). There has been nothing presented to date which would indicate that in the context of a referendum a contribution ceiling would not have a limiting effect on the quantity of speech, albeit perhaps not the speech of the contributor.[7] Indeed, the unrefuted testimony of Samuel Vitali indicates that the contribution ceiling will prevent plaintiff from spreading its message if left untouched. Moreover, the court is of the view that the rights of association and speech are so inextricably interwoven as to be virtually inseparable.

As correctly pointed out by defendants, freedom of association is not explicitly addressed in the First Amendment. It is a peripheral right which is necessary to effectuate fully the free speech guarantees and as such it is no less entitled to protection, for "[w]ithout those peripheral rights the specific rights would be less secure." *Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). This freedom of association is not a hollow promise which assures only that one is free to perform the "symbolic" act of aligning oneself with a cause and no more. Rather, this freedom encompasses the right to gather in groups to effectively advocate one's point of view. In modern society the transmission of ideas through the various communications media has become an extremely expensive proposition. A full page advertisement in a major newspaper would

---

**7.** Under the circumstances of this case the distinction of whether the speech is that of plaintiff or that of a contributor may lose its significance. Let's Help Florida is organized for the purpose of supporting a single issue. Unlike a candidate for office with many issues to discuss, plaintiff can concentrate its efforts on one theme and in this regard a contribution may be more directly transformed into speech. The committee could therefore be viewed as a conduit for the speech of the contributor directed to a single goal.

most probably be prohibitively expensive for most individuals and television advertising would be out of the question. Were the court to accept defendants' rather ingenious argument the resultant effect on freedom to associate could well be catastrophic for it would leave a state free to regulate any pooling of resources so long as it did not restrict the right to combine. Accordingly, the fact that section 106.08(1)(d) of Florida's campaign finance act does not affect the "symbolic" act of associating with a political committee is of little consequence because it undeniably renders that association less effective.

Finally, defendants claim that the constitutionality of section 106.08 has been decided by the Florida Supreme Court in *Richman v. Shevin*, 354 So.2d 1200 (Fla.1978). The facts and opinion of the court belie this position. In *Richman* the appellant was challenging the inclusion of the Dade County Judicial Trust Fund within the definition of a "political committee" as used in Fla. Stat. §§ 106.011(2) and 106.08. The contribution limitations contained in section 106.-08 were not in issue. As the court noted:

> Appellant expressly declares that he does not challenge the constitutionality of the contribution limitation but, rather, only questions the imposition of such limitation on the Judicial Trust Fund.

*Richman v. Shevin, supra* at 1204. It is therefore clear that any argument that *Richman* upholds the constitutionality of section 106.08, as that section applies to Let's Help Florida, is totally without merit.

### Compelling State Interest

Beginning with the proposition that the state generally has an overriding interest in preserving the integrity of the election process, defendants present several justifications for this legislation. First, it is claimed that the public's right and the state's interest in full disclosure of contributions to and expenditures by political committees is sufficiently compelling to sustain the ceiling. It appears unquestionable that the primary purpose behind this so-called "who gave it, who got it" law is to

assure that the source of contributions and expenditures in the political arena can be identified. Clearly the voting public is entitled to this information and has a need for such disclosure in order to effectively evaluate the credibility of those advocating positions on issues of importance. However, this interest cannot be used as a catch-all to sustain regulation with which it has no logical nexus. The identity of the contributor does not change with the size of the contribution, nor is information regarding contributors less available as the size of the contribution increases. It is, therefore, clear that a contribution ceiling has no relation to disclosure, while at the same time limiting important associational freedoms which are worthy of protection. *Buckley v. Valeo, supra,* 424 U.S. at 15, 96 S.Ct. 612. If the State of Florida is of the view that the disclosure provisions presently in effect are inadequate to assure that the desired information is readily available perhaps the wisest course would be to amend the law, for it is certain that a limitation on contributions to a political committee does not effectuate the goal of disclosure.

Defendants next contend that the contribution ceiling is necessary to assure that contributions which are received by a committee which has expressed a position on a particular issue are used in a manner which is consistent with that purpose. This argument appears to be an attempt by defendants to justify section 106.08(1)(d) by pointing out the weaknesses in the act as a whole. As noted above, chapter 106 contains a requirement that all political committees file a statement of organization detailing the issues and candidates it supports or opposes. Fla.Stat. § 106.03(2)(f), (g), and (h). Committees so registering are not "locked in" to this initial statement, but changes must be reported within 10 days of the change. Fla.Stat. § 106.03(3). Therefore, it is conceivable, although highly unlikely, that a committee which originally indicates that it supports an issue could receive contributions and thereafter amend its statement of organization to reflect its opposition to that same issue. However,

whatever interest the state may legitimately have in prevention of this abuse is not sufficient to justify the campaign limitation as it applies to plaintiff. Defendants have presented no evidence that such a switch in position has occurred in the past. The unrefuted testimony before this court is that Let's Help Florida is organized for one purpose and that purpose will not change during its campaign. (Testimony of Samuel Vitali). Further, even if it were established with reasonable certainty that such an abuse would occur, the statute at issue here does nothing to remedy or prevent it. Section 106.08(1)(d) limits contributions to political committees in support of or in opposition to an issue to be voted on in a statewide election. It does not require that funds so contributed be segregated and spent in a manner which is consistent with the statement of organization on file at the time the contribution is made, nor does it provide a mechanism for refunding monies contributed prior to a change in position. To argue that this section is aimed at the prevention of this evil is tantamount to saying that so long as contributions do not exceed $3,000 the state has no interest in their disposition, but once they exceed that figure, it becomes a matter of grave concern to assure that they are used in accordance with the purpose for which they have been contributed. Clearly this cannot be the reason for the contribution ceiling.

■ Defendants further argue that the state's interest in prevention of corruption and the appearance thereof provides a sufficient basis for sustaining this legislation. Certainly it is too late in the day to suggest that prevention of corruption and its appearance would not provide justification for limiting contributions to *candidates* for elective office. *Buckley v. Valeo, supra.* Plaintiff, however, does not make this contention. Throughout this litigation plaintiff has taken the position that in the context of an issue election the potential for such corruption is not evident.[8] The Su-

preme Court has recognized that the interests which serve to justify limitations on *candidate* contributions may not be sufficient to justify other types of restrictions in the political process. *Buckley v. Valeo, supra* at 45, 96 S.Ct. 612. Moreover, that Court recently has squarely rejected this interest in the context of a statute prohibiting corporate spending relative to issue elections. The Court stated:

> Nor are appellee's arguments inherently persuasive or supported by the precedents of this Court. Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections, *e. g., United States v. International Union United Auto Workers, supra ; United States v. CIO, supra,* simply is not present in a popular vote on a public issue. (footnote omitted).

*First National Bank of Boston v. Bellotti,* —— U.S. ——, ——, 98 S.Ct. 1407, 1423, 55 L.Ed.2d 707 (1978). Other courts have made this same distinction. See, for example, *Schwartz v. Romnes,* 495 F.2d 844 (2d Cir. 1973). It is therefore clear that in the context of an issue campaign and election, if there is to be one, the threat of corruption is minimal at best and is not sufficiently compelling to sustain this ceiling on contributions as it applies to plaintiff.

Finally, defendants argue that if section 106.08(1)(d) is declared unconstitutional a political committee need only express an interest in an issue and it is then free to avoid all campaign contribution limitations. They claim that under the statutory scheme political committees are given extraordinary privileges to amass large sums of money and, without contribution limitations, are subject to none of the countervailing restrictions placed on individuals. The argument is circuitous. In Florida a person with ample resources may spend without restriction to promote his views on a given issue. That same person, however, may not

---

8. At the present time the issue supported by plaintiff is not scheduled to appear on the November election ballot. This fact does not, however, change the focus of the inquiry for

under chapter 106 the activities of plaintiff in gathering signatures on a petition would appear to be regulated. Fla.Stat. §§ 106.011(6), (7).

give more than $3,000 to an organized committee embracing the same views. Further, two persons wishing to band together to pool their resources are required to register as a political committee and could spend only $6,000 to support or oppose the same issue. Far from being a privilege, this restriction of the right of small groups to effectively voice their collective opinion represents a serious limitation on associational freedoms. Such a group could not legally circumvent the contribution limitations to a candidate which have been authoritatively sustained. *Buckley, supra.*

■ Through Art. XI § 3 the Florida Constitution reserves to the people an important method of securing amendments to the organic law of the state. This mechanism is available to all members of the electorate, those who espouse popular as well as unpopular ideas; and the availability of this sacred right cannot be made to depend upon the transitory popularity of a given issue. It cannot be disputed that large sums of money would be required to secure the petition signatures necessary to place such a proposed amendment before the electorate. It therefore becomes virtually impossible for persons with limited resources to utilize Art. XI § 3 under the present restrictions imposed by section 106.-08(1)(d). The State of Florida by legislative act cannot legitimately relegate this initiative provision guaranteed by the Florida Constitution to a mere illusory right without demonstrating the existence of a compelling interest. Such an interest has not been shown in this case.

### ORDER

In accordance with the foregoing opinion it is hereby ORDERED AND ADJUDGED that Fla.Stat. § 106.08(1)(d) (1977) as it applies to plaintiff Let's Help Florida only under the facts of this action is violative of the First and Fourteenth Amendments to the Constitution of the United States.

The Clerk of this Court is directed to enter judgment in favor of plaintiff and against defendants declaring Fla.Stat. 106.-08(1)(d) (1977) to be unconstitutional and

permanently enjoining defendants from enforcing against plaintiff the limitations contained therein in the context of an issue election as defined in Fla.Stat. § 106 *et seq.*, with costs to plaintiff.